The first case on the call of the docket today is Agenda No. 5, No. 129067, Nancy Clayton v. Oakbrook Healthcare Centre, Ltd. Counsel for the appellant, are you prepared to proceed? Yes. Good morning, Carter Corey from the law firm of Corey Richardson, LLP, on behalf of the appellants, the defendants in this case. May it please the court. The issue on this appeal is whether this Supreme Court, in the Carter case, intended that Survival Act claims be arbitrated, where the contract includes an arbitration clause and also a termination on death clause, as interpreted and applied by the 4th District in the Mason case. I believe that by first starting with the Carter case and showing that we believe it intended to support that proposition, and then showing how the 4th District in Mason properly interpreted, analyzed, and applied the Carter case. Whereas in our case, the 1st District declined to follow the 4th District in Mason, a case exactly on point with our case. And the defendants will show that the reasoning was not in line with Carter and that Mason was the correct decision. This is an interesting case. I want to start with the Carter case because Chief Justice, I believe in 2012, you wrote the opinion in the Carter case. So usually I'm arguing about a case 30 years ago where the justice who wrote the case cannot say, you're wrong. So I hope on the record today there's a lot of, oh yeah, that was right, rather than I stand corrected. But either way, I do look forward to this experience. In the Carter case, there was two arbitration agreements. And the main issue was, does a wrongful death claim, is it subject to arbitration? And Chief Justice, what you did is you said, let's contrast the wrongful death claim with a Survival Act claim. And you broke it down, and I want to read from it because you said, the Survival Act allows an action to survive the death of the injured person. Whereas the Wrongful Death Act created a new clause of action that does not accrue until death. The Survival Act simply allows a representative of the decedent to maintain those statutory or common law actions that had already accrued to the decedent prior to death. So my understanding is the differentiation between the wrongful death and the Survival Act claim was, because the Survival Act, the claim accrues prior to death. And the arbitration agreements were valid prior to death. You then ruled, the Supreme Court ruled, that arbitration was required. Let's engage in a discussion, then. Obviously, that case, there's a significant distinction in the facts, where here, the agreement we're looking at has additional language that was not present in that case. And the additional language here, of course, is that the agreement would terminate upon death. How does that change the analysis? A couple of quick things. Thank you, Your Honor, Justice. You go on to say, and I caught this after reading this case many times, right after what I quoted, you said, in other words. And then you quoted from another Supreme Court case, Wyness. And you said, a survival action allows for recovery of damages for injuries sustained up to the time of death, whereas a wrongful death claim is for death and after. So there's two things that you made clear in Carter. Even though there was not, we don't know if there was, but you can just correct me, there was no termination on death clause. The two positions that the Supreme Court took was, if the claim accrues prior to death, and if a Survival Act claim covers damages up to death, everything is going on prior to death. How could the termination on death clause be triggered? The only, the death of the injured starts a wrongful death claim. It never triggers. The contract's valid, and the termination on death clause is never triggered. That is the way the Fourth District interpreted the Carter case, and that's the way I believe it should be interpreted. And then, in addition, if you look at contract interpretation, you know, I'm moving a lot forward to answer your question, Chief Justice. It says you look at the plain meaning to find the intent of the parties, all right? And then you don't just look at a provision. You've got to look at the entire agreement. What the First District did is they just focused on the termination on death clause and said, it's crystal clear, terminates. The Fourth District took it a step farther. They both quoted contract interpretation law, the same exact law, but the Fourth District did what I think is fatal to the First District in this case. They went on to quote that public policy strongly favors arbitration and enforcing arbitration clauses. So, therefore, they looked at the entire agreement, especially the arbitration provision, and said, hey, there's nothing in this arbitration provision that says a claim that accrues prior to death but is brought after death is excluded or doesn't survive termination or isn't post-termination. Couldn't your clients have easily written that into that contract had they so chosen? Two positions on that are by putting the broad arbitration provision, we believe the drafters, I can't speak for the drafters, but I believe they did cover that. They didn't put a clause that said this is arbitration is the forum until death, until termination. They put a very broad arbitration provision. So we believe they did draft it with the intent. So why shouldn't we just follow that very plain language that there's an arbitration clause and that's required until death? Based on, that's why the Fourth District, I think, the Mason Court, they really did cover this. If you look at the, there's federal and state of Illinois strong public policy in favor of arbitration and enforcing arbitration provisions. So rather than just looking at the termination clause and saying that's it, it was arbitration up to termination. Are you saying that the language is a bit ambiguous or? If you look at the two clauses, the First District really focused on the termination. If you look at both clauses, there's an argument to be made that it's ambiguous. So shouldn't they be, I mean, shouldn't they go against the drafter then? But not if, that's the one thing the Mason Court did, which is great. They said not, if there's ambiguity and there's public policy, strong public policy in favor, then you don't look at the, you don't take the side against the drafters. You actually want to enforce the public policy, strong public policy. Therefore, try to find a way to enforce the arbitration clause. I actually found a case, not from this state, that said they actually severed the arbitration provision from the entire agreement and said there was consideration so they could get around a termination on death clause. So that's, and because public policy in the federal level, with the FAA, and in the state of Illinois, it strongly favors arbitration and enforcing arbitration. So I believe the fourth district properly found a way to find it enforceable, whereas the first district, I think it's fatal. They never discussed the public policy considerations. So in the Carter case, just summing up, the three issues where I thought, in our case, we didn't know if there was a termination on death clause. So the three issues where I think the Carter case supports what, how Mason interpreted it was, that the claim accrues prior to death. The damages cover up to death. So therefore, the termination on death clause is never triggered. And lastly, also the Carter case said it's an asset of the estate. So it's actually, unlike a wrongful death claim, it belongs to the deceased. And if the deceased, while alive, wanted to limit the forum and the manner that the case was, that any claims would go forward, then we should respect that intent of the deceased because this is their estate. The Survival Act allows their estate to get any money received in this Survival Act claim. Now, in this case, it was a power of attorney that was acting. Is that correct? Yes, a power of attorney. Mason, similar to our case, power of attorney health care. But my argument would be, what was the intent of the deceased? They allegated that intent to the POA health care. So I would try to say that that was the intent of, by signing a POA health care, you're saying, I trust you that you'll make decisions on my behalf. Moving on to the Mason case, which I believe properly interprets and analyzes Carter and rules. They say three things, which I think are very important, which I think they properly analyzed Carter and applied it to this situation. They said, first of all, the Supreme Court noted a clause of action brought pursuant to the Survival Act accrued prior to the death of the decedent. Counsel, may I ask you just a basic question? In your view, when does the contract terminate? The interesting thing about this case, I agree, that a termination clause will terminate a contract. But there's two – I could differentiate this case with two things. Number one, a nursing home contract is a contract for services. And so a termination clause – I'm just talking about this particular contract. In your view, when does it terminate? I believe that everything terminates except for the arbitration provision. Oh, really? And where does it say that in the contract? There is no limiting language. That's the argument. And it's a unique case because of the Survival Act, you're dealing with a claim that accrues prior to death. And the only thing after death is that it's filed. So it's a unique situation where every other contract, you could argue, termination clause is a termination clause. I'm not going to make any more nails if I'm a nail provider when there's a termination of the contract. But this case is different because you have the claim accrues statutorily. But going back to Justice O'Brien's question, wouldn't it have been simple to simply say everything about this contract terminates except for the arbitration clause? Wouldn't it have – if that had been written into the contract, we wouldn't be here. Isn't that correct? Yes. And I don't have information. Your client drafted the contract, right? Well, with my own experience with representing nursing homes, there's form contracts. So I cannot say for the record if they drafted the contract. But the form contract is proposed on behalf of a person. I mean, it just didn't come out of the ether. So your client proposed the form contract, right? Correct. Okay. And it could have been revised. But the argument could be made that also the resident or the resident's POA could have said, I want to make it clear that the arbitration provision does not survive termination. Well, isn't it a basic rule of contract construction, though, that these little ambiguities are construed against the drafter? Yes, but the reason I think the Fourth District really got this right is because of the strong public policy favoring arbitration and enforcing arbitration agreements. Even in the nursing home setting, that does trump the drafter unfavorable position towards the drafter. In Mason, they actually, when they were talking about the arbitration provision, what they said is the language of the arbitration clause does not suggest it is inapplicable to claims that accrued before the resident's death but were brought after the resident's death. Counsel, are you, in effect, asking us to ignore the termination on death clause because of public policy? Well, with contract interpretation law, to look at the contract as a whole. And so we have a termination on death clause for a services agreement, which it terminates on death because you can't provide nursing home services to a deceased person. And the contract also says if the resident has to leave, go to the hospital, it terminates. You can't provide the services. It's a personal services contract. Yes, the contract terminates. That's all the provisions in the contract. Right. And then my second argument would be if you look at both provisions, like the contract interpretation law says, and if it is okay, these are ambiguous, they conflict with each other, what do we do? And the case law says, like the Fourth District applied, at that time strong public policy would trump the drafter argument. And it would trump the argument of we're ignoring the termination on death clause. No, we're not. The termination on death will apply to everything except for the arbitration provision. Lastly, the Mason case. The plaintiff's attorneys at the trial court level and in the appeal were the same attorneys. In the Mason case, which was decided before our case, and in this case, the Mason court went on to say we're not persuaded by the cases cited by plaintiff, which I believe are almost identical to the cases that they cite in this case. None of these cases address the applicability of an arbitration clause to a claim that accrued prior to the party's death but was brought after death. And I would also add none of those cases deal with the Illinois Survival Act. So I think it differentiates those cases that have to do with contracts and termination of contracts from other states. Like I said earlier, I believe that the first district in our case, not considering the public policy, the strong public policy considerations, I think it is fatal to them saying we're not going to follow the fourth district and we're just going to focus on one clause. I think it goes against the contract interpretation rules, and it goes against the rule that says we should try to make sure public policy is followed, especially strong public policy. Just summing up the arguments, not addressing the alternative arguments of the plaintiff, of the applique, the Supreme Court said the contract was valid when the cause of action accrued. Therefore, prior to death, when the cause of action accrued, when damages are available in a Survival Act claim, the contract was valid. And the termination on death clause was not triggered. And then Chief Justice quoted from another Supreme Court case about the damages, that they only go up to death and death forward is a wrongful death claim. So I believe that shows that the clause was not triggered. It's an asset of the deceased's estate that the POA, with authority from the deceased, could limit the forum, being arbitration. And then the most important, I believe, is the contract interpretation law, combined with the strong public policy in favor of arbitration, and enforcing arbitration clauses, federal and state of Illinois, and specifically for elder care nursing home cases. The dispute resolution is favored to be arbitration. We believe that you should vacate the opinion of the First District in our case and remand it so that they can rule based on how Mason interpreted the Carter case and how Mason ruled. Thank you, counsel. Good morning, Your Honors. Michael Rasak, I'm here on behalf of the plaintiff, Nancy Clanton. I'd like to just begin with one of counsel's first points, which was to rely upon policy. Policy is not part of the process here because the document, that issue that governs this case, as the court has indicated with some of its questions, was very clear. It simply said that it terminates immediately upon the resident's death. The resident died. The contract terminated. The contract included the arbitration clause. The arbitration clause died with the contract. There's no grounds for the motion to carry the case to arbitration. As one of Your Honors mentioned, as was suggested in our briefs, it would have been very easy if the nursing home intended that there be an exception for these kinds of claims under the Survival Act. It could have put that into its agreement. As a matter of fact, in the same section, Section F, F5, they actually had a phrase, they added a phrase in there that all other terms of this contract shall remain in effect from termination until the resident is transferred. So whoever drafted this agreement on behalf of the nursing home was well aware that you could make an exception to the termination on death clause if you wanted to do that. We cited to the court a number of cases, not on point, but they were all to illustrate to the court that the courts have recognized that if you want to change the terms of a contract, you need to add those terms to the contract and not rely upon the court to do that. Counsel, the opposing counsel argues, well, look, the Survival Act, it's not even triggered. You know, the claim accrues up to the death, so it doesn't matter. Absolutely, except that the question here is not when the action was triggered, but the grounds for the relief that the parties have and the grounds for the relief that the parties have in their saying is the arbitration agreement, but the arbitration agreement terminated upon death. So that has to mean that the contract did not survive Ms. Jensen's death. I'm not sure if that answers your question, Your Honor. I'm looking at your face and saying I'm not sure that I missed it. Go ahead. I'm listening. I'm not sure that I missed it. Their argument, I think their argument is really that because the cause of action accrued before the resident, the patient I called the patient, the resident died, that for some reason that means that the arbitration clause within that otherwise terminated contract follows that claim forward. But those are two separate questions. One question is who gets to bring the clause of action? It falls under the Survival Act. The administrator brings the clause of action. The next question is what rights do the parties have after the resident dies? The only right that they have after the resident dies are the rights under the contract or under the law. The contract no longer gives them any rights, no longer gives the nursing home any rights. The only rights the nursing home has in this case is under the law, and the law does not give anybody a right to arbitration simply because you would like to have arbitration. I could continue talking, but it's a simple point. I really don't have anything to add beyond that. I think unless the Court has further questions or unless the Court would like me to go into our alternative argument, which has to do with the power of attorney, I don't think we need to do that. That's been covered in the brief. We would ask the Court to affirm. Is there any other issue here floating around about who has the power of attorney to enter into these contracts? Can you address that? Yes, absolutely. This has come up in several other cases along the way. A power of attorney for health care is a very limited power of attorney. It gives the bearer the right to make only health care decisions, in this case for the resident. If a contract of residency, which is what they're usually called for a nursing home, requires that the resident agree to arbitration before the resident is allowed to enter the nursing home, then agreeing to arbitration is a condition of care. If it's a condition of care, then the person carrying the power of attorney can, in fact, agree. But if the admission to the nursing home is not conditioned upon agreeing to arbitration, which was the case here, then the person holding the power of attorney does not have authority to bind the person, to bind the resident, to bind the principal, actually is the case. That's the Fiala case. The argument that I think is being made here is that the residency contract here does not specifically say whether or not the resident had to agree to arbitration as a condition of admission to the nursing home. To answer that, we would go back to the fact that if the contract doesn't say that and the nursing home wants to rely upon that, they had to make the contract clear. And we suggested and showed to the court the reason that these nursing home contracts, this one and almost I don't think I've seen it in any other one, don't require arbitration as a condition of admission, which would make it a health care decision that's subject to the health care power of attorney, is that CMS, the Center for Medicare, doesn't allow it. Everybody knows that. Everybody in the business knows that. This contract fell outside those parameters, but it would explain why there is no such clause in this contract, because if you are a Medicare provider and this home was a Medicare provider, you have to comply with Medicare regulations. If you don't comply, Medicare will lift your authorization, which would be a death blow to a nursing home. That's a long-winded answer. I'm sorry, Your Honor, but that happens, I think, to be a complex topic, and I've had to argue it before. Unless there are further questions from the court, we simply ask that the court affirm the decision of the appellate court. Thank you. Thank you very much. Just a couple of things, Justices. I know a big case coming up, even though the survival act. They're all big cases. It's true. Thank you. Just to respond to the POA health care position, in football we call it the Hail Mary. So an alternative argument was made. There's only one issue in front of this court, and it's an interesting issue about the survival act. Does it require arbitration if there's arbitration provision and determination on death clause? So what the appellees did is they had about ten other arguments at the appellate level with the first district, and they chose one of them, and I think it's one of the weaker arguments, because at the appellate level, Justice Hyman and myself, we started off going back and forth. I had an objection to the foundation for the POAs, and in the appellate court, Justice Hyman or Justice Buchinsky says we won't deal with that evidentiary issue because we're just saying it's determination on clause is why we're affirming the trial court. So I think if you want to consider the POA issue, the first thing is remand it back to the appellate court because there was some unsettled business there. But if this court does want to address the POA health care argument, the Fiala case actually supports the appellants because the Fiala case says there's two times, two things have to happen for the POA health care to bind arbitration for the principal under the POA health care. Number one, if the provision, the arbitration provision is part of the admission agreement, and that's undisputed in our case. It's a provision in the agreement. There's a case the appellate decides to call testa testa where it's a separate agreement, and they say, no, Fiala does not apply. You cannot, the POA health care cannot sign that agreement with the arbitration provision. That's not the case. It's undisputed. It's in our admission agreement. The second thing is if it's required for admission or continued admission. If you get both of those, then it is a health care decision because you want to make sure that the principal is in the facility. And so it is still binding the arbitration agreement. The contract, it actually does, and we said this in our briefs, on every single page, in the top of the contract it says a contract is required by federal and state regulations. Every single page says that. And then section C4 talks about if the payment source changes, you have to enter into another contract, and that's what happened in our case here. But most importantly, F3 clearly states, the resident's refusal upon seven days' notice to execute a new contract when required shall be deemed voluntary termination of this contract by the resident and shall be a basis for voluntary discharge proceedings under the Nursing Home Care Act. So I believe it was for continued admission it was required, and I believe we satisfied both prongs of the FIALA test, and therefore the POA health care could bind arbitration agreement to the resident. The Mason case, and I keep going back to Mason and the Fourth District, they dealt with the same exact situation and had the same exact conclusion, where they found that the POA health care who signed that agreement could bind the arbitration provision. As to the CMS regulation, like counsel said, it was not effective until after this contract was signed, so I think it's fatal right there on that argument. But then the case, the Northwood case, I think it's called Northwood, that case actually specifically, that's the case that said that it does not conflict with the FAA. And the FAA says you cannot, the only way you could invalidate an arbitration agreement is through contract defenses, fraud, duress, unconscionability. You cannot make a separate thing just to defeat the arbitration provision. And so there was a lawsuit because the CMS has this thing that says you cannot require someone signs an arbitration clause before being admitted. And in this case it said it doesn't violate the FAA because the CMS is a regulation. They cannot invalidate an agreement. They cannot invalidate an arbitration agreement or an arbitration clause. They can only seek administrative penalties if there's a violation of the amended CMS regulation. So therefore, in this case, we asked the court, they cannot invalidate the arbitration provision under the CMS regulation. And then lastly, I just want to touch on one thing. It's kind of almost an equitable argument. If everything is allowed to go back, so a survival act claim, it accrues when the injured was alive. The damages are for the pain and suffering that the deceased injured person suffered until they died. Then we believe it's only equitable to say, all right, let's go back. Was there a valid contract at that time? And if there was a valid contract, enforce that contract. And that's a valid contract, and that's pre-triggering the termination on death clause. To say everything goes back, except for the contract, when the only thing that post-death happens is the filing of a case by a representative of the deceased, I just don't think it's equitable also. And that's on top of ‑‑ Well, and the only thing that changes by enforcing the termination on death clause is where this action moves forward. It doesn't impact any other rights of the parties, does it? No, no, you are correct, Justice. That would be the only thing impacted. But if we look at the intent of the parties back when the cause of action accrued, the parties had agreed to arbitration. So I think it's only fair to say, what was going on back then? The appellee's whole argument is, what's going on now? Well, the termination on death clause triggered. Sorry, you have to leave. And that equitable argument is just in addition to my contract interpretation with a strong public policy. If there's no more questions, then I'll wrap up. Thank you very much. Thank you. This matter, Agenda No. 5, No. 129067, Nancy Clayton v. Oak Brook Health Care Center Limited, will be taken under advisement. Thank you both for your arguments.